# IN THE UNITED STATES DISTRICT COURT FOR THE
# SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| **MICHAEL POPE, #265261,** | : | |
|     **Plaintiff,** | : | |
| vs. | : | **CIVIL ACTION 13-0345-KD-C** |
| **CO I SMITH,** *et al.*, | : | |
|     **Defendants.** | : | |

## REPORT AND RECOMMENDATION

This § 1983 action, filed is an Alabama prison inmate proceeding *pro se* and *in forma pauperis*, is before the Court on plaintiff's "Motion for Leave and Permission from the Court to Amend the Civil Complaint in this Action in the Interest of Justice" ("motion"). (Doc. 31). This motion has been referred to the undersigned for appropriate action pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4). After careful review, it is recommended that the motion be denied for the reasons set forth herein.

**I. Proceedings.**

    **A. Posture of Action.**

This action is presently before the Court on two summary judgment motions. Two correctional officers at Holman Correctional Facility ("Holman"), who are the only defendants to this action, filed separate answers and special reports, which have been converted into the motions for summary judgment. (Docs. 21, 22, 24, 25, 27, 34). After plaintiff was given notice that defendant Smith's motion for summary judgment would be taken under submission on December 9, 2013 (Doc. 27), plaintiff filed the present

motion on February 3, 2014 (Doc. 31), after the time period for responding to the summary judgment motion.

The complaint in this action was filed on July 5, 2013, and alleges that an officer was not present in the dorm when an inmate stabbed plaintiff on July 20, 2012. (Doc. 1). Defendant Smith was alleged to have left his post in the dorm prior to being properly relieved at the end of his shift and to have waited in the cubicle where he continued to observe the dorm until his relief, defendant Sizemore, arrived. (Doc. 22-2 at 1). Recently, on March 12, 2014, plaintiff advised the Court that he did not object to summary judgment being entered for defendant Sizemore. (Doc. 41 at 1, "Response to Defendants['] Motion[s] for Summary Judgment"). Plaintiff stated that after reading defendant Sizemore's special report, he wants "to move forward with this litigation again CO I Smith[,]" because defendant Sizemore would not have been involved except for the fact that he was to relieve defendant Smith. (*Id.* at 2).

**B. Motion.**

In the present motion to amend (Doc. 31), plaintiff seeks to add a claim and a defendant, Commissioner Kim Thomas.[1] For the new claim, plaintiff alleges that on or about January 1, 2014, inmates at Holman "participated in a non-violent and peaceful protest for civil and human rights, where, among other issues, the prisoners were contesting the overcrowded, understaffed, living conditions that are contributing to

---

[1] Subsequent to filing his motion to amend, plaintiff filed his "Response to Defendants['] Motion[s] for Summary Judgment" (Doc. 41), in which he states that he wants "to move forward with this litigation against CO-1 Smith[]" and does not object to summary judgment being granted for defendant Sizemore. (Doc. 41 at 1). No mention was made in this response about Commissioner Kim Thomas, although he did mention that he would like to re-assert the allegations in his complaint and amended complaint. (*Id.* at 1). Thus, plaintiff's statement indicates to the Court that plaintiff's focus is defendant Smith who should have been at his post in the dorm, and not on matters that he brings in this amendment.

2

high levels of violence within Alabama Dept. of Corr." (*Id.* at 2). Plaintiff advises that facts from the Free Alabama Movement and a three-part investigative series by the *Montgomery Advertiser* show that "Alabama Prisons are the <u>most</u> overcrowded in the Nation at nearly 200% occupancy rate, holding over 27,000 prisoners in space designed to hold appx. 13,700." (*Id.*). "At the time of plaintiff's assault [July 20, 2012], which occurred in B-dorm at Holman Unit, B-Block held 114 prisoners with only one (1) officer assigned to supervise them. This ratio of 114 to 1 makes it impossible for the ADOC to provide for plaintiff[']s safety [and] security, and contributed to the high level of violence that occurs at Holman Correctional Facility which is a level-5 security prison which holds some of Alabama['s] most violent prisoners." (*Id.*).

In the motion, plaintiff also wants to add Commissioner Kim Thomas as a defendant. (*Id.* at 3). He alleges that Commissioner Thomas is responsible for Alabama Department of Corrections' operations, which includes adequately staffing Holman. (*Id.*). Plaintiff asserts that Holman is designed to hold less than 600 prisoners, but it *currently* holds over 1000 through double bunking and reducing space to the point where "two men sleep side by side to each other, with a piece of plywood less than one (1) inch thick separating the two beds." (*Id.*). Plaintiff maintains that Commissioner Thomas is operating Holman beyond its design capacity and is violating the Eighth Amendment's prohibition against cruel and unusual punishment. (*Id.*). Plaintiff contends that "[t]his level of overcrowd[ing] at a maximum security prison means that more violent and dangerous prisoners are housed in less and less space, with only on (1) correctional officer to oversee 114 prisoners." (*Id.*).

For relief, plaintiff seeks an order requiring the Commissioner to reduce the prison population to its design capacity and to hire a full staff of correctional officers at

3

Holman, and $100,000 in compensatory and punitive damages for operating Holman at overcapacity, which "he knows only accelerates violence an[d] has le[]d to multiple stabbings, assaults, and deaths[,]" such as plaintiff being stabbed without an officer being present. (*Id.* at 4).

    **C. Defendants' Responses to the Motion.** (Docs. 35, 38).

Defendants were ordered to respond to the motion to amend. Defendant Smith objected to the amendment because the amendment is late as defendant Smith's special report had already been filed, is not related to the allegations in the original complaint, and is absent of allegations that the Commissioner was involved with plaintiff being stabbed. (Doc. 35 at 1). Furthermore, to allow the amendment would add a different cause of action and would be prejudicial to defendant Smith. (*Id.*).

Likewise, defendant Sizemore objected to the allowance of the amendment. (Doc. 38). Defendant Sizemore maintains that the addition of the Commissioner and a claim for conditions of confinement at Holman in 2014 would prejudice the defendant because it would turn "a relatively simple case of whether a correctional officer was properly discharging his [duties] into an extremely lengthy and cumbersome trial, having little to do with the original claim." (*Id.*). Moreover, defendant Sizemore asserts that the original complaint's facts do not support a claim for unconstitutional conditions of confinement at the time of the incident. (*Id.* at 2). Defendant Sizemore contends that plaintiff bases his unconstitutional conditions of confinement claim at Holman upon conditions that were in existence on January 1, 2014, at Holman, which were widely reported in various media, where plaintiff apparently learned of them. (*Id.*). Plaintiff was not affected by the conditions at Holman on January 1, 2014 because he was incarcerated at Kilby at that time. (*Id.*). Therefore, defendant Sizemore asserts that

plaintiff does not have standing to litigate the conditions of confinement at Holman that he has not experienced. (*Id.*).

## II. Analysis.

Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend should be "freely given," except in the presence of " 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment[.]'" *McKinley v. Kaplan,* 177 F.3d 1253, 1258 (11th Cir. 1999) (quoting *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)). With respect to futility, the law of this Circuit is clear that "a district court may properly deny leave to amend the complaint under Rule 15(a) when such amendment would be futile." *Hall v. United Ins. Co. of America,* 367 F.3d 1255, 1263 (11th Cir. 2004). "When a district court denies the plaintiff leave to amend a complaint due to futility, the court is making the legal conclusion that the complaint, as amended, would necessarily fail." *St. Charles Foods, Inc. v. America's Favorite Chicken Co.,* 198 F.3d 815, 822 (11th Cir. 1999).

Upon consideration of plaintiff's motion and defendants' responses thereto, the Court finds that the amended complaint fails to state a claim upon which relief can be granted, and therefore its allowance would be futile. In the amendment plaintiff intermingles facts that allegedly existed on or about January 1, 2014 with facts that allegedly existed on July 20, 2012 when he was stabbed. The facts connected to conditions at Holman when plaintiff was stabbed are: 114 prisoners were in his dorm with one guard assigned to oversee them. (Doc. 31 at 2). However, no facts are provided to show if his dorm was overcrowded at that time, and if there was

5

overcrowding, no facts are provided to show inmate violence increased as a result. Moreover, no facts are provided to show that one guard is not sufficient to oversee 114 inmates or that adequate security could not be provided.

The other information provided by plaintiff appears to relate to a time after plaintiff's stabbing when he was no longer incarcerated at Holman.[2] For example, plaintiff states that *currently* Holman houses over 1000 inmates, which has caused double bunking because Holman is designed to accommodate only 600 inmates. (*Id.*). Furthermore, plaintiff relied on reports published in September, 2013 that said "Alabama's prisons are the <u>most</u> overcrowded in the nation at nearly a 200% occupancy rate, holding over 27,200 prisoners in space designed to hold app[roximately] 13,700." (*Id.*). These facts, however, do not relate to the time when plaintiff was stabbed, or to the situation in his dorm or at Holman when he was stabbed.

In the case of *Rhodes v. Chapman*, 452 U.S. 337, 101 S.Ct. 2392, 69 L.Ed.2d 2392 (1981), the Supreme Court found that double celling at a prison did not constitute cruel and unusual punishment and "[t]he double celling made necessary by the unanticipated increase in prison population did not lead to deprivations of essential food, medical care, or sanitation. Nor did it increase violence among inmates or create other conditions intolerable for prison confinement." *Id.* at 347, 101 S.Ct. at 2399. The Court held that "[n]o static 'test' can exist by which courts determine whether conditions of confinement are cruel and unusual, for the Eighth Amendment must draw its meaning from the evolving standards of decency that mark the progress of a maturing society.'" *Id.* at 346, 101 S.Ct. at 2399. The Court reasoned that conditions that

---

[2] Plaintiff indicates that was transferred from Holman on June 18, 2013 to Kilby Correctional Facility, and then transferred again on March 6, 2014 to Donaldson Correctional Facility. (Doc. 41 at 3),

6

deprive "inmates of the minimal civilized measure of life's necessities. . . . could be cruel and unusual under the contemporary standard[s] of decency[.]" *Id.* at 347, 101 S.Ct. at 2399. The Court further opined, "conditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional. To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Id.* Finding "no evidence that double celling under the[] circumstances either inflicts unnecessary or wanton pain or is grossly disproportionate to the severity of crimes warranting imprisonment[,]" the Court held that double celling did not violate the Eighth Amendment's proscription against cruel and unusual punishments. *Id.* at 349, 101 S.Ct. at 2401.

Thus, it is incumbent on plaintiff to plead facts that would show that conditions under which he lived in B-Dorm at Holman on July 20, 2012, amounted to cruel and unusual punishment culminating in him being stabbed by another inmate. Plaintiff has not pled the necessary facts in his motion to make this showing.

As pleaded, the original complaint contains a straightforward claim based on plaintiff's being stabbed by an inmate because a guard left his post in the dorm. There are no allegations in the complaint attributing the stabbing to overcrowding and then that the overcrowding resulted in an environment of inmate violence or that adequate security was not scheduled. Whereas, in the amendment plaintiff is belatedly attempting to connect his stabbing to over crowded conditions, with a couple of bald references to inmate violence inserted, and a lack of adequate security.

In order to state a claim a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," so as to "nudge[ ][his] claims across the line from conceivable to plausible." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955,

7

1974, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (citation omitted). The minimum pleading standards "require[ ] more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555, 127 S.Ct. at 1964. As the Eleventh Circuit explained, *Twombly/Iqbal* principles require that a complaint's allegations be "enough to raise a right to relief above the speculative level." *Speaker v. U.S. Dep't of Health and Human Servs. Ctrs. for Disease Control and Prevention*, 623 F.3d 1371, 1380 (11th Cir. 2010) (citations omitted). "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679, 129 S.Ct. at 1937 (quoting Fed.R.Civ.P. 8(a)(2)).

In the amendment, plaintiff's allegations, for the most part, do not address the time period around July 20, 2012 when plaintiff was stabbed. The allegations do not describe the situation at Holman or in plaintiff's dorm at the time of the stabbing which would lead the Court to conclude that overcrowding and inmate-on-inmate violence existed and that security was inadequate. Thus, the Court concludes that the amendment's allegations are speculative and do not meet the plausibility standard for stating a claim. Therefore, the granting of the amendment would be futile. *Spanish Language Broadcasting System of Fla. v. Clear Channel Comm., Inc.*, 376 F.3d 1065, 1077 (11th Cir. 2004); *St. Charles Foods*, 198 F.3d at 822.

Furthermore, an alternative reason exists to deny plaintiff's motion. At the present time, plaintiff has narrowed his lawsuit as being against defendant Smith. *See*

8

Doc. 41 at 1. Therefore, the allowance of the amendment would expand the present lawsuit from a simple lawsuit that determines whether defendant Smith, the officer on duty, was deliberately indifferent to a substantial risk of serious harm to plaintiff to a lawsuit that includes a supervisory official who is responsible for the overall management of the state's prison system, who was not alleged to be deliberately indifferent. *See Iqbal*, 556 U.S. at 676, 129 S.Ct. at 1948. The evidence needed to pursue such a lawsuit that includes the prison commissioner as a defendant would be extensive and wide-ranging and include many statistics. Whereas, plaintiff had the option when he filed his original complaint eight months ago to pursue a claim of this nature and to include the Commissioner as a defendant, but he did not. It is only after the possibility of his claim against defendant Smith being dismissed on summary judgment that he sought to expand his action. Thus, the Court concludes that the granting of the amendment would be prejudicial to defendants. *See Lavender v. Kerney*, 206 F. App'x 860, 864 (11th Cir. 2006) (affirming the denial of an amendment because, *inter alia*, its claims were based on another set of facts against another officer which would unduly prejudice the remaining officer); *Barrett v. Independent Order of Foresters*, 625 F.2d 73, 75 (5th Cir. 1980)[3] (finding the trial judge did not abuse his discretion when he denied a motion to amend that was filed almost ten months after the original complaint and contained matters that could have been raised initially). Therefore, the Court finds that defendants would be prejudiced if this amendment was to be allowed at this point in the litigation.

---

[3] The Eleventh Circuit in *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), adopted as binding precedent the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

**III. Conclusion.**

Based upon the foregoing reasons, the Court concludes that plaintiff's motion is due to be denied because it is futile and, alternatively, would unduly prejudice the defendants.

**NOTICE OF RIGHT TO FILE OBJECTIONS**

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b); S.D. ALA. L.R. 72.4. The parties should note that under Eleventh Circuit precedent, "the failure to object limits the scope of [] appellate review to plain error review of the magistrate judge's factual findings." *Dupree v. Warden, Attorney General, State of Alabama,* 715 F.3d 1295, 1300 (11th Cir. 2011). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this 24th day of March, 2014 .

s/ WILLIAM E. CASSADY
UNITED STATES MAGISTRATE JUDGE