**IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **MICHAEL POPE, JR., AIS # 265291,** | : | |
| **Plaintiff,** | : | |
| **vs.** | : | **CIVIL ACTION 13-0345-KD-C** |
| **COI SMITH, *et al.*,** | : | |
| **Defendants.** | : | |

**REPORT AND RECOMMENDATION**

This § 1983 action, brought by an Alabama prison inmate proceeding *pro se* and *in forma pauperis*, is before the Court on the motions for summary judgment of defendants COI Mack Smith and COI James Sizemore, and plaintiff's opposition thereto. These motions have been referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4). After consideration of these pleadings, and for the reasons set out below, it is recommended that the motions for summary judgment of defendants be granted and that plaintiff's action against these defendants be dismissed with prejudice.

**I. Facts and Proceedings.**

This action arose from plaintiff being stabbed by inmate Thomas while plaintiff was sleeping in his assigned bed. (Doc. 1 at 9). At the time of the stabbing, no guard was present in plaintiff's dorm at Holman Correctional Facility ("Holman"). Defendant Smith was assigned to the guard post in the dorm, but was not present in the dorm, and defendant Sizemore had just arrived

at the cubicle for the shift change to replace defendant Smith when the stabbing occurred.  (*Id.*).  Plaintiff sues both defendants in their individual and official capacities (*id.* at 10, 12), and seeks $50,000 in compensatory damages for violations of the Eighth and Fourteenth Amendments of the Constitution and substantive and procedural due process, $50,000 in punitive damages, and injunctive and declaratory relief.  (*Id.* at 11, 13-14).

Defendants Smith and Sizemore, the only defendants, are represented by separate counsel and have filed separate answers (Docs. 21, 24) and special reports (Docs. 22, 25), which have been converted into motions for summary judgment by the Court.  (Docs. 27, 34).[1]  Having been given notice of this conversion and an explanation of Rule 56 of the Federal Rules of Civil Procedure and its impact on his action, plaintiff filed unsworn responses (docs. 28, 41) and the affidavit of inmate Rodney Reed, which is signed under penalty of perjury (doc. 29, attached to a document improperly titled an amended complaint), in addition to a motion to amend the complaint to add as a defendant Commissioner Kim Thomas and claims for overcrowding, inmate-on-inmate violence, and inadequate staffing of correctional officers.  (Doc. 31).

Based on the record before it, the Court summarizes the parties' allegations that it finds material to the issues addressed in this Report and Recommendation.  On July 20, 2012, between 5:49 a.m. and 6:10 a.m., inmate Andre Thomas attacked plaintiff while plaintiff was sleeping in his assigned bed, bed 95A, Housing Unit B ("dorm"), at Holman.  (Doc. 1 at 9).  Plaintiff was

---

[1]  Recently, on March 12, 2014, plaintiff notified the Court that he "does not object to the Court granting CO I Sizemore summary judgment although he still desires to move forward with this litigation against CO I Smith."  (Doc. 41 at 1, Response to Defendants['] Motion for Summary Judgment).

stabbed many times in his back and left side with a prison-made knife, which forced him awake and caused him to attempt to defend himself and to take flight. (*Id.*; Doc. 25-2 at 2). Plaintiff saw his assailant run to the front of the dorm but did not see a security guard inside the dorm who either could have either come to his aid or subdued the assailant to keep him from attacking plaintiff again. (Doc. 1 at 9). Plaintiff further noticed that the lights were on, which meant the guards were about to change shifts or had changed shifts. (*Id.*). Then another inmate, Robert Dozier, ran to the front gate and informed defendant Sizemore, who was coming on duty, that he needed to check the dorm because there had been a stabbing.[2] (*Id.* at 9; Doc. 25-2 at 2). Defendant Sizemore immediately began walking the aisles of the dorm, and when he arrived at bed B-95, he found plaintiff in his bed covered with blood from wounds to his left side and back. (*Id.*; Doc. 25-9 (body chart)).

By this time, plaintiff had lost a substantial amount of blood. (Doc. 1 at 9-10). At 6:07 a.m., defendant Sizemore immediately called for assistance. (*Id.* at 10; Doc. 25-2 at 2). While at the same time, plaintiff's assailant began attacking inmate Dozier in retaliation for telling the officer about plaintiff being stabbed.

_____

[2] On summary judgment, the Court is treating the allegations in a light favorable to plaintiff. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). Plaintiff stated in his complaint that inmate Dozier told defendant Sizemore that a stabbing had occurred in the dorm, (doc. 1 at 9), even though plaintiff was not present to hear what inmate Dozier told defendant Sizemore. On the other hand, defendant Sizemore said that inmate Dozier did not tell him what had happened, where and when it happened, and to whom it happened before inmate Dozier disappeared into the dorm. (*Id.*). Therefore, plaintiff's statement that inmate Dozier told defendant Sizemore that a stabbing had occurred is hearsay. Whether this statement is admissible is not at issue because defendant Sizemore's actions appear to have been reasonable whether he was informed of the stabbing or that an incident occurred. And plaintiff agrees because he advised the Court that he "doesn't object to the Court granting CO. I Sizemore summary judgment." (Doc. 41 at 1).

(Doc. 1 at 10).  Officers then rushed to the front of the dorm to stop the fight.  (*Id.*).[3]  Defendant Sizemore assisted other personnel in lifting and placing plaintiff in wheelchair.  (Doc. 25-2 at 2).  Plaintiff was taken to Holman's hospital where he received medical care and spent the night.  (*Id.*; Doc. 1 at 10).  The next day plaintiff was taken to segregation so he could recover.  (*Id.*).  Defendant Sizemore remained in the dorm and completed his shift at 6:02 p.m.  (Doc. 25-2 at 2; Doc. 25-1 at 1).

Before this incident occurred, defendant Smith, who had been assigned to the post in the dorm, left his post before the officer who was to relieve him arrived, even though it was his duty as a corrections officer to remain until relieved.  (Doc. 1 at 10).  Defendant Smith states that at 5:55 a.m., he left the dorm and waited for his relief in cubicle #1.  (Doc. 22-2 at 1).  This fact is undisputed.  Even though he was not in the dorm, he "kept a watchful eye over the dorm."  (*Id.*).  Defendant Sizemore relieved him at 5:59 a.m. and he clocked out at 6:01 p.m.  (*Id.*).  Everything was peaceful in the dorm when he left cubicle #1.  Id.  "When [defendant] Sizemore relieved [him] from [his] duties, [defendant Sizemore] was still inside [cubicle] One as [he] walked away."  (*Id.* at 2).  At approximately 6:15 a.m., while he was still in the parking lot, having a conversation with other officers, Sgt. Hampton drove by and told them that there was just an incident in the dorm.  (*Id.*).

It is undisputed that on July 20, 2012, defendant Sizemore reported for work at 5:56 a.m. prior to his 6:00 a.m. start time  (Doc. 25-1(timecard); *see* Doc. 22-2 at 1 (affidavit of defendant Smith stating defendant Sizemore relieved him

---

[3]  Both inmates, Dozier and Thomas, received disciplinaries based on this fight.  (Doc. 1 at 13; Doc. 25-7 at 6).

at 5:59 a.m.)).  Upon his arrival at cubicle #1, defendant Sizemore found defendant Smith in cubicle #1, who had been assigned to B-dorm on the preceding night shift.  (Doc. 25-2 at 1).  Defendant Sizemore proceeded to secure his personal belongings and food items in cubicle #1.  (*Id.*).  Defendant Sizemore then proceeded to his "assigned post as the dormitory officer for housing unit 'B' from 6:00AM until 6:00 PM CST."  (*Id.*).  Defendant Smith "departed the cubicle and adjoining area prior to [defendant Sizemore] entering the entrance gate to housing unit 'B' to properly relieve him of his post."  (*Id.*).  Before defendant Sizemore entered the dorm, inmate Dozier "approached the entrance gate to housing unit 'B' (which is approximately four (4) feet from cubicle #1)[,]" told him something had "happened" in the dorm, and disappeared into the dorm.  (*Id.* at 2).

In the incident report investigating defendant Smith's actions, it states, "upon further investigation into the incident, it was concluded that the incident actually occurred before shift change while Officer Smith was off his assigned post and inside Cubicle 1."  (Doc. 25-4 at 4).  Warden Patterson recommended defendant Smith be suspended for three days without pay because he was "not properly relieved nor did [he] have permission from [his] immediate supervisor to be off [his] assigned post," which was in violation of the regulations.  (*Id.* at 2-3).  In making this determination, Warden Patterson relied, in part, on Annex H to AR #208, which provides: "Item number 28. Leaving assigned post and/or work station before the end of the shift/work day without permission from proper authority or proper relief resulting in actual consequences. (First Offense)."  (*Id.* at 3).  Defendant Smith eventually waived a hearing on his discipline before the Commissioner.  (*Id.* at 1, 5).  With respect to defendant Sizemore, he was also

reprimanded for this incident based on his failure to "properly relieve[] the dorm officer from the dormitory," which resulted in him being unable to provide pertinent information, and was in violation of "rules, policies, procedures, regulations and laws." (Doc. 25-3 at 1-2).

After this action was filed, plaintiff's assailant, inmate Andre Thomas, sent an unsworn statement to a classification officer, Ms. Glass. (Doc. 25-5). In his statement, he stated that he had not been promised or paid anything for it, but he wanted to help clear defendant Sizemore. (*Id.* at 2). He stated that when he stabbed plaintiff, defendant Sizemore's shift had not started and that defendant Smith had not been in the dorm most of the night. (*Id.*). He "felt [that he] had to get [plaintiff] long before the sh[i]ft changed [because] [he] feared that the other inmate would tell and there wouldn't be a chance to get [plaintiff] back for breaking [his] nose[.] [S]o each move [he] made that night was timed[.] [A]t the time [he] stabbed [plaintiff,] it was 5:52[.] [Defendant Smith] left out the dorm like 30 to 40 minute[s] before the stabbing." (*Id.*).[4] A classification supervisor in a sworn affidavit stated that he interviewed inmate Andre Thomas about the statement, and related, "[inmate Thomas] wrote the statement, it was true and factual, [inmate Thomas] signed the statement, and sent copies to C.O. Sizemore and Classification Specialist Glass." (Doc. 25-5 at 4).[5]

---

[4] Another reason for the assault is given in the incident report chronicling the fight between inmate Thomas and inmate Dozier. It indicates that Thomas's assault on plaintiff was due to canteen items that Thomas owed to plaintiff. (Doc. 25-6 at 2).

[5] Counsel for defendant Sizemore describes inmate Thomas's statement as a "rare and interesting development." (Doc. 25 at 6). In addition, counsel is candid with the Court when he advises that Ms. Glass is married to defendant Sizemore. (*Id.*).

In a disciplinary proceeding based on the charge of assault on another inmate, inmate Thomas admitted to stabbing plaintiff. (Doc. 25-7). Inmate Thomas was found guilty and received a disciplinary sentence of thirty days in segregation, thirty days' loss of store, phone, and visitation privileges, and referral to classification. (*Id.* at 3). Immediately after the disciplinary hearing, inmate Thomas pled guilty in a subsequent disciplinary proceeding to the charge of fighting without a weapon for starting a fight with inmate Dozier, plaintiff's friend, shortly after stabbing plaintiff. (*Id.* at 7). Inmate Thomas testified that he swung first and that inmate Dozier did not do anything. (*Id.* at 7-8). The disciplinary sentence for the second disciplinary is identical to the first disciplinary. (*Id.* at 8).[6]

In an affidavit signed under penalty of perjury, and submitted by plaintiff after the conversion of defendant Smith's special report to a motion for summary judgment, inmate Rodney Reed relates that that he was in the same dorm as plaintiff on July 20, 2012. (Doc. 29-1 at 1). Inmate Reed, who had been "awake the entire night," observed that prior to the stabbing there was absolutely "<u>Zero</u> guard present inside the Dormitory . . . . Throughout the entire night CO.I Smith left his Dormitory Post numerous times unattended, an[d] when Plaintiff was awakened out of his sleep, CO. I Smith wasn't on his assigned post [as] he'd been gone at least 20 minutes prior to the stabbing. When CO. I Smith exited the dorm

---

[6] In the disciplinary reports the times for the attack on plaintiff and the attack on inmate Dozier are identified as occurring at approximately 6:20 a.m. (Doc. 25-7 at 3, 6). In the accompanying documentation, plaintiff argues that he could not be in two places at the same time. (*Id.* at 4). Mrs. Beasley responded that when she entered the dorm at *approximately* 6:20 a.m. plaintiff was already "stuck" and he was fighting with another inmate. (*Id.*). The times reflected in the disciplinary reports do not affect the Court's analysis of a federal claim for failure to protect.

the lights came on approximately 10 minutes before 6:00 am shift change." (*Id.* at 1-2). He stated that he "had a clear view of the plaintiff, while also being very observant that there was no officer on post in their stationary high chair that sits in the front of the dormitory." (*Id.* at 2).

In the complaint, plaintiff alleges that if defendant Sizemore had been at his post, he would have seen the attack, or his presence would have discouraged his attack, but he was away from his assigned post and inside the cubicle. (Doc. 1 at 12-13). While on the other hand, the overwhelming evidence furnished by defendants and plaintiff reflects that defendant Sizemore had not arrived at the post in the dorm when plaintiff was stabbed. (Doc. 25-2 (defendant Sizemore's affidavit); Doc. 25-4 (warden's suspension of defendant Smith finding he was off his post when the incident took place); Doc. 29 at 2 (inmate Reed's sworn affidavit)).

## II. Summary Judgment Standards.

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it "might affect the outcome of the suit under the governing [substantive] law." *Id.*; *see Tipton v. Bergrohr GMBH–Siegen*, 965 F.2d 994, 998 (11th Cir.), *cert. denied*, 507 U.S. 911 (1993). Moreover, "what is considered to be the 'facts' at the summary judgment stage may not turn out to be the actual facts

if the case goes to trial, but those are the facts at this stage of the proceeding for summary judgment purposes." *Cottrell v. Caldwell,* 85 F.3d 1480, 1486 (11th Cir. 1996).

The basic issue before the Court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." A*nderson,* 477 U.S. at 251–52. "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Miranda v. B & B Cash Grocery Store, Inc.,* 975 F.2d 1518, 1534 (11th Cir. 1992). The moving party has the burden of showing the absence of a genuine issue as to any material fact, and in deciding whether the movant has met this burden, the Court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157 (1970); *Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1115 (11th Cir. 1993); *Tipton,* 965 F.2d at 998–99. In addition to demonstrating that there is no genuine issue of material fact, the movant must also satisfy the ultimate burden of persuasion on the claim by showing that it would be entitled to a directed verdict at trial. *See Fitzpatrick,* 2 F.3d at 1116.

Once the movant satisfies its initial burden under Rule 56(c), the burden shifts to the nonmovant to "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (quoting FED.R.CIV.P. 56(e)) (emphasis omitted). Although "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor," *Anderson,* 477 U.S. at 255, "[a] mere 'scintilla' of evidence supporting the [nonmoving] party's position will not suffice; there

must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby,* 911 F.2d 1573, 1577 (11th Cir. 1990). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita,* 475 U.S. at 587.

Moreover, the non-movant "bears the burden of coming forward with sufficient evidence on each element that must be proved." *Earley v. Champion Int'l Corp.,* 907 F.2d 1077, 1080 (11th Cir. 1990). If "a party . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," Rule 56(c) mandates that summary judgment be entered against that party. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

## III. Analysis.

### A. Eighth Amendment Claim.

In order to recover on a § 1983 claim, an inmate must show a violation of federal right. *Hale v. Tallapoosa County,* 50 F.3d 1579, 1582 n. 3 (11th Cir. 1995). To that end, plaintiff claims that his rights under Eighth and Fourteenth Amendments were violated, as were his substantive and procedural due process rights. Because plaintiff is a prisoner, the Eight Amendment's proscription against "cruel and unusual punishments" governs his claims, whereas, the Fourteenth Amendment does not apply to his claims because he is not a pre-trial detainee. *Id.* at n.4. Furthermore, plaintiff does not have a claim for a violation of his procedural due process rights, as it is not plausible that a hearing must have been afforded plaintiff prior to inmate Thomas stabbing him. *Whitley v. Albers*, 475 U.S. 312, 327, 106 S.Ct. 1078, 1088, 89 L.Ed.2d 251 (1986). In addition, a substantive due process claim that is distinct from the protections offered by

the Eighth Amendment is not recognized. *Id.* at 327, 106 S.Ct. at 1088; *see Albright v. Oliver,* 510 U.S. 266, 273, 114 S.Ct. 807, 813, 127 L.Ed.2d 114 (1994)("Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims.'") (quoting *Graham v. Connor,* 490 U.S. 386, 395, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989)). Thus, plaintiff's § 1983 action is based on a violation of the Eighth Amendment alone.

In order to state a failure to protect claim under the Eighth Amendment, plaintiff "must plead facts that establish '(1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation.'" *Losey v. Warden*, 521 F. App'x 717, 720 (11th Cir. 2013) (unpublished)[7] (quoting *Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th Cir. 1995)). Each of these elements must be satisfied in order to prevail on an Eighth Amendment failure to protect claim. *LaMarca v. Turner,* 995 F.2d 1526, 1535 (11th Cir.), *cert. denied,* 510 U.S. 1164 (1994).

### 1. Substantial Risk of Serious Harm.

In the present action, plaintiff is required to establish the first element by showing that a substantial risk of serious harm existed. To establish this objective element, the burden is on plaintiff to show that at the time he was stabbed that a substantial risk of serious harm existed that would result in injury to him in particular or to him as an inmate in his dorm or at Holman. *Id.* ("This objective standard 'embodies 'broad and idealistic concepts of dignity, civilized

---

[7] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11TH CIR. R. 36-2 (2005).

standards, humanity, and decency ...,' ' but must be balanced against competing penological goals.") (citations omitted). Plaintiff's evidence on this element, however, is insufficient because the evidence that can be garnered from his submissions is scant. He maintains that there was no guard in the dorm when he was stabbed but does not address that defendant Smith's observation of the dorm from within the cubicle is inadequate. Plaintiff maintains that the lights were on when he was stabbed, which further increased the visibility for an officer to watch. (Doc. 1 at 9; Doc. 29 at 2 (inmate Reed's affidavit)). Except for these facts, plaintiff provides no facts that can be considered on summary judgment demonstrating that the conditions inside the dorm or at Holman constituted a substantial risk of harm to him, such as, facts showing inmate-on-inmate violence, understaffing, inadequate procedures to ensure safety, or overcrowding. *See Morgan v. Davenport*, CA No. 10-00665-KD-N, 2012 WL 426729, at *6 (S.D. Ala. Jan. 19, 2012) (citing *Purcell ex rel. Estate of Morgan v. Toombs Cnty., Ga.*, 400 F.3d 1313, 1321 (11th Cir. 2003)).

Instead of making a factual showing, plaintiff appears to base his position on the belief that "[a]ccording to A.L.D.O.C. Administrative Regulations, and Federal + State settled law, officers must be stationed inside + outside of dorms at all times." (Doc. 1 at 10, 12). Assuming, without deciding, that there may be an administrative regulation that requires this, not every deviation from an agency's rules violates the Constitution. *Smith v. Georgia*, 684 F.2d 729, 732 n. 6 (11th Cir. 1982); *see United States v. Caceres*, 440 U.S. 741, 754-55, 99 S.Ct. 1465, 1473, 59 L.Ed.2d 733 (1979) (evidence was admitted at trial even though it was obtained in violation of an agency's rules because it was not obtained in violation of the Constitution). Plaintiff also states that settled state law has this staffing

requirement.  He did not identify the law, and the Court did not find such a requirement; nonetheless, a violation of state law does not automatically amount to a constitutional violation.  *See Harris v. Birmingham Bd. of Educ.*, 817 F.2d 1525, 1528 (11th Cir. 1987) (a violation of a state statute does not necessarily equate to a constitutional violation).  While on the other hand, for a § 1983 claim, the Constitution does not mandate that an officer be in the dorm.  *Cf. Smith v. Campbell,* No.2:05-cv-0975-WKW, 2008 WL 659793, at *5 (M.D. Ala. Mar. 6, 2008) (finding that the plaintiff failed to prove the conditions at Easterling posed a substantial risk of serious harm and that the lone allegation of the guard not being at his post did not establish deliberate indifference).  Rather, the standard for determining liability under the Eighth Amendment is set out above, *Losey, supra; Hale, supra,* and does not contain a specific requirement that a guard be inside and outside of the dorm.

The Court notes in passing that plaintiff's unsworn motion to amend, in which he seeks to add the prison commissioner as a defendant, contains limited factual information relative to the condition of his dorm at the time of the assault. That is, his dorm "held 114 prisoners with only one (1) officer assigned to supervise them.  This ratio of 114 to1 makes it impossible for the ADOC to provide for plaintiff['Js safety [and] security, and contributed to the high level of violence that occurs at Holman Correctional Facility which is a level-5 security prison which holds some Alabama['Js most violent prisoners."  (Doc. 31 at 2). This information cannot be considered by the Court in ruling on the motion for summary judgment because it is not the caliber needed for summary judgment, as explained in its order (docs. 27, 34), and the allegations by themselves are not sufficient to establish that a substantial risk of serious harm existed due to their

conclusory nature. *See Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (conclusory statements do not possesses the required plausibility to state a claim).

Therefore, considering that plaintiff's evidence is a scintilla, the Court finds that a reasonable jury would not be able to return a verdict for plaintiff on the element that a substantial risk of serious harm existed at the time plaintiff was stabbed. Thus, plaintiff has failed to establish the first element of an Eighth Amendment claim that a substantial risk of serious harm existed at the time he was stabbed.

### 2. Deliberate Indifference.

Even though plaintiff's failure to establish one of the elements of an Eighth Amendment failure to protect claim will result in a recommendation of dismissal being entered, the Court will address the second element of a failure to protect claim, the subjective element of deliberate indifference. *LaMarca,* 995 F.2d at 1535 ("[T]he Eighth Amendment contains a subjective component: whether the defendant wantonly permitted the constitutionally infirm condition to persist. In prison condition cases, 'deliberate indifference' constitutes wantonness.") (citations omitted). Conduct that is merely negligent does not constitute deliberate indifference. *Farmer,* 511 U.S. at 836, 114 S.Ct. at 1979; *cf. Daniels v. Williams,* 474 U.S. 327, 328, 106 S.Ct. 662, 663, 88 L.Ed.2d 662 (1986) (section 1983 does not recognize a cause of action based on a negligent act by an official that "caus[es] unintended loss of or injury to life, liberty, or property").

The second element requires that plaintiff show defendants Smith and Sizemore, each, were deliberately indifferent to a substantial risk of serious harm that he would be injured. To prove deliberate indifference by defendants Smith

and Sizemore to the risk that he would be injured, plaintiff must establish: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence." *Goodman v. Kimbrough,* 718 F.3d 1325, 1331 (11th Cir. 2013) (quoting *Townsend v. Jefferson County,* 601 F.3d 1152, 1158 (11th Cir. 2010).[8] That is, "[t]o be deliberately indifferent a prison official must know of and disregard 'an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Id.* (quotations and emphasis omitted). "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer v. Brennan,* 511 U.S. 825, 838, 114 S.Ct. 1970, 1979, 128 L.Ed.2d 811 (1994). Furthermore, "[p]roof of deliberate indifference requires a great deal more than does proof of negligence." *Goodman,* 718 F.3d at 1332.

Not only must plaintiff show that a substantial risk of serious harm existed, he must establish with evidence that each defendant "subjectively knew of the substantial risk of serious harm and that [each defendant] knowingly or recklessly 'disregard[ed] that risk by failing to take reasonable measures to abate it[.]'" *Hale,* 50 F.3d at 1583 (quoting *Farmer,* 511 U.S. at 847, 114 S.Ct. at 1984) (second and third brackets in original). The determination of whether a defendant had the required knowledge is a question of fact that may be

---

[8] The *Goodman* case arises under the due process clause of the Fourteenth Amendment because its plaintiff was a pretrial detainee. The Eleventh Circuit noted that the standards for analyzing a case "under the Fourteenth Amendment are identical to those under the Eighth Amendment." *Goodman,* 718 F.3d at 1331 n.1. Thus, the Court will refer to Eighth and Fourteenth Amendment cases interchangeably. *Id.*

demonstrated in various ways, including "inference from circumstantial evidence." *Id.* (quoting *Farmer,* 511 U.S. at 842, 114 S.Ct. at 1981). And a factfinder is permitted to conclude, "a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer,* 511 U.S. at 842, 114 S.Ct. at 1981.

In the case at hand, the evidence presented by plaintiff does not show that defendant Smith or defendant Sizemore knew that plaintiff would be attacked or injured by inmate Thomas or by any other inmate. Even though plaintiff's failure to give notice to either defendant that he feared an attack is very relevant to his claim, it is not dispositive. *Hale,* 50 F.3d at 1583. Plaintiff may also show a defendant "had subjective knowledge of a generalized, substantial risk of serious harm from inmate violence." *Id.* But plaintiff did not allege in his complaint and did not offer evidence that either defendant Smith or Sizemore knew of a generalized, substantial risk of serious harm from inmate violence.

Moreover, if plaintiff had established that a defendant possessed knowledge of substantial risk of serious harm, this mere possession of knowledge is insufficient to establish deliberate indifference. *Id.* A defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer,* 511 U.S. at 837, 114 S.Ct. at 1979. That is, deliberate indifference is not established merely by alleging that a prison guard was not at his post. *See Hale,* 50 F.3d at 1582 (guard's failure to check "bullpen" for two-and-a-half hours during which time plaintiff was beaten by other inmates did not "support the level of deliberate indifference and causal connection necessary to hold [the jailer] personally responsible.").

It is incumbent on plaintiff to make an additional evidentiary showing that a defendant drew the inference and "knowingly or recklessly 'disregard[ed the] risk by failing to take reasonable measures to abate it.'" *Hale*, 50 F.3d at 1583 (quoting *Farmer*, 511 U.S. at 848, 114 S.Ct. at 1984). However, "[m]erely negligent failure to protect an inmate from attack does not justify liability under § 1983. . . . The known risk of injury must be a strong likelihood, rather than a mere possibility before a guard's failure to act can constitute deliberate indifference." *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir.) (citations and internal quotations omitted), *cert. denied*, 486 U.S. 928 (1990).

With respect to defendant Smith, he stated in his sworn affidavit that although he left his post in the dorm before he was relieved, he "kept a watchful eye over the dorm" from cubicle #1. (Doc. 22-2 at 1). There is no evidence to contradict defendant Smith's statement or to address the efficacy of guarding inmates from the cubicle, and the evidence shows that the lights were on. Thus, due to the lack of evidence, a reasonable jury would not be able to find for plaintiff that defendant Smith's conduct was wanton.

Furthermore, with respect to defendant Sizemore, no evidence is presented that he was deliberately indifferent. Shortly after arriving at the cubicle #1 and before he was able to assume the guard post in the dorm, he was confronted by inmate Dozier at the gate who told him that there had been a stabbing. (Doc. 1 at 1). Defendant Sizemore immediately proceeded to investigate by walking the aisles of the dorm, and upon finding plaintiff, he immediately called for assistance. (Doc. 25 at 2). When the wheelchair arrived, he helped place plaintiff in it. (*Id.*). This evidence only reflects that defendant Sizemore acted reasonably given the situation, and not recklessly or negligently.

Accordingly, the Court concludes that a reasonable jury would not be able to find for plaintiff on the deliberate indifference element as the evidence is only a scintilla with respect to defendant Smith and is completely lacking in regard to defendant Sizemore. *See Horsley v. Flores,* 2013 WL 785483, at *4 (N.D. Fla. Feb. 5, 2013) (unpublished) (dismissing *sua sponte* a failure to protect claim lodged against the warden because no particularized facts were in the complaint that showed the warden was deliberately indifferent to the risks of using inmate snitches, which resulted in plaintiff being stabbed while he was asleep because he was mistaken for the snitch in the next bed); *Smith,* 2008 WL 659793, at *6 (M.D. Ala. Mar. 6, 2008) (unpublished) (finding that plaintiff failed to establish that the defendant had the requisite subjective awareness as the attack "was isolated and spontaneous and apparently unanticipated by [plaintiff] as well as Defendants" and that the attack was the proximate result of a lack of security or of overcrowded conditions).

### 3. **Causation Element.**

In light of plaintiff failing to meet his burden on the other two elements, the Court is not obligated to discuss the causation element. *Carter v. Galloway,* 352 F.3d 1346, 1350 n.10 (11th Cir. 2003) (declining to discuss the causation element after it determined the defendants did not have the information needed to draw an inference that a substantial risk of serious harm existed by leaving plaintiff in cell with a "problem inmate"). Nonetheless, in the present case, the evidence indicates that an attack on plaintiff appears not to have been anticipated by plaintiff as well as by both defendants. Plaintiff's evidence does not reflect that the attack was proximately caused by the lack of security, an environment of inmate-on-inmate violence, or overcrowded conditions. *Hale,* 50

F.3d at 1583 (finding defendant's cell check two and a half hours apart was not the cause for plaintiff's being beaten by his cellmates one hour after the defendant made a round). While it is unfortunate that plaintiff was injured, not "every injury suffered by one prisoner at the hands of another [inmate] translates into constitutional liability for the prison officials responsible for the victim's safety." *Farmer,* 511 U.S. at 834, 114 S.Ct. at 1977.

**B. Claims for Injunctive and Declaratory Relief.**

In addition to damages, plaintiff requested injunctive and declaratory relief "for order for 'fines', against Defendant, for conspiring against Plaintiff[']s guaranteed federally protected rights, pursuant 18 U.S.C. [§] 241 and 18 U.S.C. [§] 242[.]" (Doc. 1 at 11). This request is not clear to the Court. Nonetheless, the Court notes that plaintiff is no longer incarcerated at Holman. (Doc. 1 at 18). He was transferred to Kilby Correctional Facility, away from the defendants in this action, and subsequently transferred to Donaldson Correctional Facility, where he presently is incarcerated. (Docs. 40, 41). Therefore, his requests for injunctive and declaratory relief are moot. *Spears v. Thigpen*, 846 F.2d 1327, 1328 (11th Cir.) ("[A]n inmate's request for injunctive and declaratory relief in a section 1983 action fails to present a case or controversy once an inmate has been transferred.") (citation and quotation marks omitted), *cert. denied*, 488 U.S. 1046 (1989).

**C. Claims Under 18 U.S.C. §§ 241 and 242.**

Sections 242 and 242 of Title 18 of the United States Code criminalize civil-rights violations. *United States v. Comstock*, 560 U.S. 126, 136, 130 S.Ct. 1949, 1958, 176 L.Ed.2d 878 (2010) (§ 241); *Hope v. Pelzer*, 536 U.S. 730, 739, 122 S.Ct. 2508, 2515, 153 L.Ed.2d 666 (2002) (§ 242). Therefore, these sections being "criminal in

nature . . . provide no civil remedies." *Hanna v. Home Ins. Co.*, 281 F.2d 298, 303 (5th Cir.), *cert. denied*, 365 U.S. 838 (1961);[9] *Thibeaux v. United States Attorney Gen.*, 275 F. App'x 889, 893 (11th Cir. 2008) (unpublished) ("[T]hese sections of Title 18 pertain to criminal law and do not provide a civil cause of action or any civil remedies."). Moreover, "a private citizen has no judicially cognizable interest in the prosecution or non-prosecution of another." *Otero v. United States Attorney General,* 832 F.2d 141, 141 (11th Cir. 1987). Accordingly, plaintiff's claims based on §§ 241 and 242 are frivolous as a matter of law. *Neitzke v. Williams,* 490 U.S. 319, 325, 109 S.Ct. 1827, 1831-32, 104 L.Ed.2d 338 (1989) (a claim may be dismissed as "frivolous where it lacks an arguable basis in law or fact.").

### D. Qualified Immunity.

Both defendants raised the affirmative defense of qualified immunity. (Docs. 21 at 2, 22 at 7; Doc 24 at 2). Inasmuch as the Court has determined plaintiff's claims fail on their merits, and therefore defendants' motions for summary judgment are due to be granted, the Court is foregoing an analysis of plaintiff's claims with respect to qualified immunity. *Pearson v. Callahan,* 555 U.S. 223, 242, 129 S.Ct. 808, 821, 172 L.Ed.2d 565 (2009).

### E. Official Capacity.

Plaintiff sued defendants in their individual capacities as well as their official capacities. An official capacity claim is generally "only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v.*

---

[9] The Eleventh Circuit in *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir. 1981), adopted as binding precedent the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

*Graham,* 473 U.S. 159, 165, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985).  The

defendants who are employees of the Alabama Department of Corrections are

state employees.  *See Ex Parte Moulton,* 116 So.3d 1119, 1138-39 (Ala. 2013).

Therefore, the State is the real party in interest to an official capacity claim.  The

State, however, is entitled to Eleventh Amendment sovereign immunity.  *Harbert*

*Int'l, Inc. v. James,* 157 F.3d 1271, 1277 (11th Cir. 1998) (State officials sued in their

official capacities are protected from suit for damages under the Eleventh

Amendment); *see Alabama v. Pugh,* 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114

(1978) (suit against State of Alabama and its Board of Corrections was barred by

the Eleventh Amendment).  Furthermore, except for a prospective injunctive

relief claim, "neither a State or its officials acting in their official capacities are

'persons' under § 1983."  *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71, 109

S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989).  Thus, plaintiff's official capacity claims

lack legal merit and are frivolous.  *Neitzke, supra.*

## IV.  Conclusion.

Based upon the foregoing reasons, the summary judgment motions of

defendants Smith and Sizemore are due to be granted and plaintiff's claims

against defendants Smith and Sizemore are due to be dismissed with prejudice,

with this action being dismissed in its entirety.

## <u>NOTICE OF RIGHT TO FILE OBJECTIONS</u>

A copy of this report and recommendation shall be served on all parties in

the manner provided by law.  Any party who objects to this recommendation or

anything in it must, within fourteen (14) days of the date of service of this

document, file specific written objections with the Clerk of this Court.  *See* 28

U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. L.R. 72.4.  The parties should

note that under Eleventh Circuit precedent, "the failure to object limits the scope of [] appellate review to plain error review of the magistrate judge's factual findings." *Dupree v. Warden, Attorney General, State of Alabama,* 715 F.3d 1295, 1300 (11th Cir. 2011). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this 1st day of April, 2014 .


s/ WILLIAM E. CASSADY
UNITED STATES MAGISTRATE JUDGE